IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


ANNA M. MILLER                                                    PLAINTIFF


        v.                          CIVIL NO. 09-3079


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                          DEFENDANT


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a

decision of the Commissioner of the Social Security Administration (Commissioner) denying

her claims for a period of disability and disability insurance benefits (DIB) under the provisions

of Title II of the Social Security Act (Act).   In this judicial review, the Court must determine

whether there is substantial evidence in the administrative record to support the Commissioner's

decision.   See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

        Plaintiff protectively filed her current applications for DIB and SSI on October 1, 2004,

alleging an inability to work since November 1, 1993, due to arthritis, neck and back pain,

fibromyalgia, panic attacks and nerves.  (Tr.  92-95).[1]   For DIB purposes, Plaintiff maintained

insured status through June 30, 1995.  (Tr. 15). An administrative hearing was held on April 12,

_____

[1] The Court notes Plaintiff's application for SSI dated October 1, 2004, was approved as the ALJ found Plaintiff was
disabled as of October 1, 2004.  SSI benefits are not payable for the period prior to the date of the
application and Plaintiff did not appeal the ALJ's decision regarding her SSI application. See Cruse v. Bowen,
867 F.2d 1183, 1185 (8th Cir. 1989); 20 C.F.R.§§ 416.330, 416.335

2007, at which Plaintiff appeared with counsel and testified. (Tr. 1355-1387).

By written decision dated July 11, 2007,  the ALJ found Plaintiff was not disabled prior to June 30, 1995, but that Plaintiff became disabled on October 1, 2004, and remained disabled through the date of the decision.  (Tr.16). The ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 18). Specifically, the ALJ found Plaintiff had the following severe impairments: affective disorder, diverticulitis, and osteoarthritis. However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 18).  The ALJ found that, prior to her date last insured, Plaintiff retained the residual functional capacity (RFC) to:

> lift and/or carry 50 pounds occasionally and 25 pounds frequently, push and/or pull within those limitations, stand and/or walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday.  The undersigned finds that the claimant was further limited and was able to perform work where interpersonal contact was incidental to work performed, e.g., assembly work, where the complexity of tasks was learned and performed by rote with few variables and little judgment and where the supervision required was simple direct and concrete.

(Tr. 20). With the help of a vocational expert, the ALJ determined that prior to her date last insured, Plaintiff could perform other work as a housekeeper/cleaner, a mail clerk, and a hand packager.  (Tr. 25).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on October 27, 2009.  (Tr. 5-7A).  Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and

-2-

AO72A
(Rev. 8/82)

recommendation.  (Docs.  6,7).

**II.   Evidence Presented:**

At the administrative hearing before the ALJ on April 12, 2007, Plaintiff testified that she was sixty years of age and had obtained a high school education.  (Tr. 1358, 1362).  The record reflects Plaintiff's past work consists of work as a waitress; however, this work did not meet the income requirements to be considered past relevant work.  (Tr. 1383-1384).

The medical evidence during the relevant time period of November 1, 1993, through June 30, 1995, reflects the following.  On December 10,1993, Plaintiff complained of persistent fatigue and malaise, nasal obstruction and a cough.  (Tr. 435).  Dr. T.R. Flygt noted Plaintiff reported she had fainted twice and that her back had been bothering her.  Dr. Flygt indicated that he did not have a complete specific picture but opined Plaintiff had a respiratory infection. Plaintiff was placed on antibiotics.

On December 17, 1993, Plaintiff reported an improvement in respiratory symptoms but indicated that she had persistent fatigue.  (Tr. 434).  Plaintiff reported when she tested her sugars they had been low.  Dr. Flygt noted Plaintiff appeared comfortable and not as fatigued as the last time Plaintiff was seen.  Plaintiff was advised to return to a diet of frequent small meals, low in simple sugars.  Plaintiff was also to undergo a glucose tolerance test.

On December 23, 1993, Plaintiff reported episodes of light headedness and near syncope for the past two weeks.  (Tr. 499).  Plaintiff was concerned that she might have an inner ear infection and possibly an infection from a rabbit bite. Plaintiff was diagnosed with dizziness and blackout episodes of uncertain cause.  Plaintiff was prescribed medication, instructed to monitor her blood sugar when she had an episode and to have a thyroid function test done.

-3-

On January 11, 1994, Plaintiff called the Prairie Clinic about her blood sugar test results. (Tr. 502). Plaintiff's blood sugar test was negative for hypoglycemia. Plaintiff thought she might be having some anxiety. Plaintiff was prescribed Buspar. Plaintiff also indicated that she would like to try Habitrol patches to help with smoking cessation. If Plaintiff continued to have problems, she would be referred to an endocrinologist.

On February 22, 1994, Plaintiff was called after her Beck Inventory was read. (Tr. 498). Plaintiff's results indicated a moderate to severe depression score. Plaintiff was started on Paxil. Plaintiff was to continue with counseling.

On April 21, 1994, Plaintiff complained of back pain. (Tr. 498). Plaintiff reported her pain was mainly down in the coccyx area and radiated up her spine to the left hip. After examining Plaintiff, Dr. Joseph P. Spurgeon opined that this was more of a mechanical back syndrome. Plaintiff was encouraged to lose weight and to exercise with a walking program. Plaintiff was given a trial of Oruvail and her prescriptions for Buspar and Paxil were renewed.

On April 29, 1994, Plaintiff reported some stomach discomfort as well as nausea and lower abdominal discomfort with diarrhea for one week. (Tr. 497). Plaintiff reported a week ago she developed some low back pain and felt it was related to having over-exerted herself while working in the yard. Dr. Spurgeon diagnosed Plaintiff with diarrhea from uncertain etiology, hemorrhoidal disease acutely, and back strain.

On May 4,1994, Plaintiff entered the emergency room at Sauk Prairie Memorial Hospital complaining of low back pain for the past four weeks that suddenly increased. (Tr. 637, 908). Plaintiff reported a shooting pain after a bowel movement. Plaintiff also reported right leg numbness. Lumbar x-rays revealed mild degenerative disk disease at L3-L4. (Tr. 639). Plaintiff

-4-

was diagnosed with low back pain with sciatica.  A MRI of Plaintiff's lumbar spine revealed degenerative changes, particularly at L3-4 and L4-5 and in the facets.  (Tr. 636).  There was no sign of disk herniation or stenosis.

On June 20, 1994, Plaintiff reported some discomfort behind the left ear and the side of her neck for about a month.  (Tr. 496).  Plaintiff also had some discomfort behind the left knee for the last three years.   Dr. Spurgeon noted Plaintiff's report that Buspar and Paxil had been working quite well.

On August 30, 1994, Plaintiff reported discomfort and soreness in basically all of her muscles for the past couple of months.  (Tr. 495).  Plaintiff reported pain and aching in her upper and lower back muscles, upper arms, forearms, thighs, shins and calves.  Plaintiff reported burning and tingling.  Dr. Spurgeon noted Plaintiff had been under a lot of stress with her husband who had had amputations.  Plaintiff reported she had been able to mow the lawn among other activities but noted aching while performing these activities.  Plaintiff reported that the Paxil was helping her.  Plaintiff was diagnosed with probable fibromyalgia.  Dr. Spurgeon recommended Plaintiff stop smoking.

On October 19, 1994, Plaintiff complained of rectal bleeding.  (Tr. 634).  Dr. Spurgeon noted Plaintiff's fibromyalgia had improved with the Flexeril and Paxil and that Buspar had been very effective for the panic attacks.

On October 28, 1994, Plaintiff reported some epigastric discomfort and burning sensation that radiated up into her neck and chest region.  (Tr. 493).  Plaintiff also reported a sour reflux-type taste in the back of her mouth. Plaintiff indicated she had also developed some right upper quadrant discomfort that often radiated into her back.   Dr. Spurgeon was concerned about

-5-

cholelithiasis and scheduled Plaintiff to undergo a gallbladder ultrasound. (Tr. 633).  Plaintiff was prescribed Amoxicillin and Zantac.

On December 9, 1994, Plaintiff complained of a cough and congestion for the past several days.  (Tr. 493).  Plaintiff was diagnosed with sinusitis and prescribed Amoxicillin.

On January 10, 1995, Plaintiff underwent an endoscopic cholecystectomy.  (Tr. 626, 630).  Patient history upon admittance revealed Plaintiff's fibromyalgia was controlled with Paxil and Flexeril.  Plaintiff was discharged the following day.  (Tr. 625).

On January 12, 1995, Plaintiff underwent an exercise stress test which was negative.  (Tr. 623, 911).

On January 26, 1995, Plaintiff reported having problems with discomfort in her low back and with numbness in her hips.  (Tr. 492).  Dr. Spurgeon noted Plaintiff had an extensive evaluation with Dr. Rosenthal and that a MRI was negative.  Plaintiff had also undergone a cholecystectomy and had done well since that time from an abdominal standpoint.  Treatment notes indicated Plaintiff had been under a lot of stress and that she had been having problems being in crowds.  Dr. Spurgeon recommended Plaintiff stay off work for another month.  Plaintiff was diagnosed with a muscle strain and low back pain.  Plaintiff was to continue off work for one month.  Plaintiff did not show up for her February 9, 1995 appointment.  (Tr. 492).

On January 29, 1995, Plaintiff was admitted into the Sauk Prairie Memorial Hospital after complaining of severe right upper quadrant abdominal and right subcapsular pain. (Tr. 616).  Plaintiff reported on January 23rd she had severe right upper quadrant pain when she bent over. (Tr. 621). Plaintiff was discharged on January 30th with instructions to rest and to avoid lifting over ten pounds for one to two weeks.

On January 31, 1995, Plaintiff complained of back and abdominal pain. (Tr. 619). Dr. Spurgeon noted a few days prior to admission into the hospital Plaintiff had been bending over to pick up a pacifier while holding her grandson. Plaintiff reported prior to her admission she had been watching the Super Bowl, cleaning her home, and getting it ready for family members to arrive when she noticed the pain. Dr. Spurgeon noted Plaintiff was off work due to her husband's medical problems as well as for her depression and panic attacks. Dr. Spurgeon noted Plaintiff's fibromyalgia was improved with the use of Paxil. He also noted that Buspar had been very effective for the panic attacks but that recently she had problems when she had been in large crowds or going to work. Plaintiff was diagnosed with abdominal pain of uncertain etiology.

On March 8, 1995, Plaintiff complained of congestion and a cough for the past three weeks. (Tr. 491). Plaintiff was diagnosed with bronchitis/sinusitis and prescribed Amoxicillin and Tessalon Perles.

On March 16, 1995, Plaintiff reported continued problems with generalized muscle ache and fatigue. (Tr. 490). Dr. Spurgeon noted the following:

> We had had concern previously for the possibility of this being a fibromyalgia and we had tried Flexeril at h.s. for muscle relaxant benefit. However, since that time she had cholecystitis and surgery and had improved some until the last few weeks when she has again experienced generalized muscle aches in her upper and lower back as well as at time[s] feeling of numbness in the lateral thighs. She has had a lot of fatigue with this as well.

(Tr. 490). Upon examination, Dr. Spurgeon noted Plaintiff demonstrated diffuse muscle soreness to palpation of the upper shoulders, rhomboideus and lateral back regions as well as in the lower back. Plaintiff was diagnosed with probable fibromyalgia.

On May 2, 1995, Plaintiff complained of diffuse muscle aches and limitations of activity

-7-

related to these aches.  (Tr. 489).  Plaintiff also reported problems with a panic disorder and anxiety.  Plaintiff reported experiencing a panic sensation while driving that caused her to pull over until the sensation subsided.  Plaintiff reported she was now worried about driving. Dr. Spurgeon noted the additional stressor caused by her husband's health problems and that Plaintiff was the full time care giver for her husband.  Dr. Spurgeon noted Plaintiff had a bone scan done that revealed cervical neck degenerative change and that she continued to have discomfort. Treatment notes indicated Plaintiff had been unable to return to work due to diffuse muscle aches, fatigue, neck pain and panic attacks.  Plaintiff was diagnosed with fibromyalgia and a panic and anxiety disorder.  Dr. Spurgeon noted that Plaintiff would remain off work because of her underlying problems.  He noted that Plaintiff was able to function as her husband's primary care giver with additional family support for driving and obtaining certain services.

While not completed during the relevant time period, the following medical assessments address Plaintiff's functioning during the relevant time period. On January 26, 2005, Dr. Brad Williams, a non-examining consultant, completed a psychiatric review technique form indicating Plaintiff had mild restrictions of her activities of daily living; mild difficulties in maintaining social functioning; had moderate deficiencies of concentration persistence or pace; and had no episodes of decompensation. (Tr. 654-667).  Dr. Williams's notes indicate the following:

> The Cl alleges medical problems and also "anxiety and panic attacks". She has no formal mental tx to date.  She had some remote tx for depression by LMD as recently as 1996.  A phone contact with the Cl about possible mental problems suggests that she is experiencing depression 2nd to chronic pain.  She did not really indicate significant limitations from her emotional concerns.  It is felt that pt's mental limitations would not prevent her form (sic) participating in basic employment.

(Tr. 666).

AO72A
(Rev. 8/82)

On the same date, Dr. Williams completed a mental RFC assessment stating Plaintiff had moderate limitations in the following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 650-652). Dr. Williams concluded that Plaintiff "is able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote; few variable little judgement: supervision required is simple, direct and concrete." (Tr. 652). After reviewing all the evidence, Dr. Dan Donahue affirmed Dr. Williams findings on April 29, 2005. (Tr. 273).

On January 20, 2005, Dr. Robert M. Redd, a non-examining medical consultant, completed a RFC assessment stating that as of June 30, 1995, Plaintiff could occasionally lift or carry fifty pounds, frequently lift or carry twenty-five pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; and that postural, manipulative, visual, communicative or environmental limitations were not evident. (Tr. 671-678). After reviewing all the evidence, Dr. Linda Green affirmed Dr. Redd's findings on May 2, 2005. (Tr. 678).

On November 17, 2006, Dr. Spurgeon completed a residual functional capacity questionnaire. (Tr. 1045-1049). Dr. Spurgeon indicated he had treated Plaintiff from December

AO72A
(Rev. 8/82)

23, 1993, through May 2, 1995.  Dr. Spurgeon indicated he had diagnosed Plaintiff with fibromyalgia, a panic and anxiety disorder, cholecystitis with subsequent cholecystectomy, diverticulitis and depression reactive of her husband's medical condition.  Dr. Spurgeon noted Plaintiff's worry for her husband was a major stressor due to his health and her need to be care giver.  Dr. Spurgeon opined Plaintiff could sit for at least six hours out of an eight hour work day, one hour without interruption; and could walk up to sixty to ninety minutes, possibly less. Dr. Spurgeon opined Plaintiff would need a job that would allow shifting of positions at will as well as unscheduled breaks. Dr. Spurgeon opined Plaintiff could occasionally lift and carry ten pounds, rarely twenty pounds; and could rarely stoop and twist, occasionally climb ladders, and never crouch.  Dr. Spurgeon indicated that Plaintiff did not have significant limitations in doing repetitive reaching, handling or fingering.  Dr. Spurgeon opined Plaintiff would have "good days" and "bad days" and would miss more than four days of work per month.  Dr. Spurgeon stated:

> The fibromyalgia would cause considerable difficulty and variability for her ability to perform work. Coupled with anxiety and depression it would be hard to maintain consistent employment especially with her caregiver responsibilities of her disabled husband.

(Tr. 1049).  Dr. Spurgeon indicated he used his office notes to prepare this form.

In a letter dated March 2, 2007, the ALJ directed interrogatories to Dr. Spurgeon with specific questions regarding the November 2006 assessment. (Tr. 1177). Dr. Spurgeon indicated that to his knowledge he had not administered any tests to determine Plaintiff's functional capacity.  Dr. Spurgeon also indicated that he did not have any independent recollection of the specific facts or complaints of Plaintiff other than what was in his treatment notes. (Tr. 1178).

-10-

### III.    Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

-11-

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

## IV.    Discussion:

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled prior to June 30, 1995, her date last insured. Defendant argues substantial evidence supports the ALJ's determination.

### A.    Insured Status:

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on June 30, 1995. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of November 1, 1993, her alleged onset date of disability, through June 30, 1995, the last date she was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB she must prove that, on or before the expiration

-12-

of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death.  Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984).  The medical evidence of Plaintiff's condition subsequent to the expiration of Plaintiff's insured status is relevant only to the extent it helps establish Plaintiff's condition before the expiration.  Id. at 1169.

      **B.**      **Subjective Complaints and Credibility Analysis:**

We first address the ALJ's assessment of Plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints.  Although Plaintiff's contends that her arthritis, fibromyalgia, diverticulitis, depression and anxiety were disabling prior to the expiration of her insured status, the evidence of record does not support this conclusion.

-13-

Regarding Plaintiff's osteoarthritis and pain, the ALJ pointed out that medical evidence during the relevant time period reveals Plaintiff did report pain in various areas including, but not limited to her low back, neck and extremities, but the objective evidence reveals only mild degenerative changes.  In April of 1994, Dr. Spurgeon noted Plaintiff complained of back pain, he prescribed an anti-inflammatory medication and recommended Plaintiff lose weight and exercise with a walking program.  Plaintiff complained of aches and soreness in August of 1994, but reported that she was able to mow the lawn and perform other activities.  At that time, Dr. Spurgeon diagnosed Plaintiff with "probable fibromyalgia" and prescribed medication.  The medical evidence reveals that in October of 1994 and January of 1995, Dr. Spurgeon indicated Plaintiff's fibromyalgia had improved with Flexeril and Paxil. Impairments that are controllable or amenable to treatment do not support a finding of disability.  Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009).

In March of 1995, Dr. Spurgeon noted that for the past few weeks Plaintiff had begun to experience more generalized muscle aches. Dr. Spurgeon noted Plaintiff had demonstrated diffuse muscle soreness to palpation and diagnosed Plaintiff with "probable fibromyalgia." In May of 1995, Dr. Spurgeon noted Plaintiff continued to complain of diffuse muscle aches and diagnosed Plaintiff with fibromyalgia.  At that time, Plaintiff was the full time care giver to her husband.  It is noteworthy that after the relevant time period, the record reflects Plaintiff was able to help watch her young grandchildren, to paint, to sit at a sewing machine all day, to work in her garden, to move into a different residence and lift heavy boxes. (Tr. 365, 473, 483, 488, 1341-1342).  The medical evidence reveals that Plaintiff reported walking one to two miles a day in November of 1997 and that Plaintiff also reported that she was relatively pain free in June of

-14-

2002. (Tr. 371, 470). Based on the entire evidence of record, we find substantial evidence of record to support the ALJ's determination that prior to June 30, 1995, Plaintiff did not have disabling osteoarthritis and pain.

With regard to Plaintiff's gastrointestinal problems, the ALJ pointed out that during the relevant time period Plaintiff did complain of epigastric discomfort and that she underwent a cholecystectomy in January of 1995. The ALJ pointed out that in August of 1995, after her insured status had expired, Plaintiff was admitted into the hospital and was diagnosed with extensive diverticulosis that responded well to medication. See Id. In July of 1996, Plaintiff was again admitted into the hospital with right upper quadrant pain. Upon admission, Plaintiff reported she had been pain free for three weeks. While the record clearly shows Plaintiff continued to have gastrointestinal problems, we find substantial evidence to support the ALJ's determination that prior to June 30, 1995, Plaintiff's gastrointestinal problems were not of a disabling nature.

With regard to Plaintiff's depression and panic attacks, the ALJ noted Plaintiff began treatment in at least 1994. A review of the record reveals that in October of 1994, Dr. Spurgeon reported that Plaintiff's mental impairments were effectively treated with medication. Id.   The record also fails to show that Plaintiff sought consistent treatment from a mental health professional during the relevant time period. Gowell v. Apfel, 242 F.3d 79, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). Based on the record as a whole, the undersigned finds substantial evidence to support the ALJ's determination that Plaintiff's depression and panic disorder were not of a disabling nature prior to June 30, 1995.

-15-

Plaintiff's subjective complaints are also inconsistent with evidence regarding her daily activities. The record reflects that during the relevant time period, Plaintiff was a full time care giver to her husband who underwent an amputation and had other health related issues. As previously noted, the record reflects that after the relevant time period, Plaintiff was able to help watch her young grandchildren, to paint, to sit at a sewing machine all day, to work in her garden, to move into a new residence, to lift heavy boxes, to walk one to two miles a day, to grade papers at school, and to work for a short time at a bookstore. (Tr. 365, 464, 470, 473, 481, 1341-42).

With regard to the testimony of Plaintiff's husband, the ALJ properly considered his testimony but found it unpersuasive. (Tr. 23). This determination was within the ALJ's province. See Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995); Ownbey v. Shalala, 5 F.3d 342, 345 (8th Cir. 1993).

Therefore, although it is clear that Plaintiff suffered with some degree of pain prior to June 30, 1995, she has not established that she was unable to engage in any gainful activity during the relevant time period. See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities support Plaintiff's contention of total disability prior to June 30, 1995. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

-16-

C.     **RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel,  245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, Plaintiff's subjective complaints, and her medical records when he determined Plaintiff could perform medium work with limitations prior to her date last insured.  In making this RFC determination, the ALJ found Dr. Spurgeon's November 11, 2006 RFC assessment indicating Plaintiff was able to do less than sedentary work prior to June 30, 1995, was not entitled to controlling weight because Dr. Spurgeon indicated that he had no independent recollection of the Plaintiff and derived his RFC strictly from his medical records. (Tr. 1177-1179).  The ALJ also pointed out that in April of 1996, Dr. Spurgeon reported that he felt Plaintiff's physical condition had been "quite good" and that Plaintiff's anxiety and panic

-17-

problems were "certainly improving" and recommended that Plaintiff continue to increase her hours at work. (Tr. 480). It is noteworthy that in April of 1999, Plaintiff saw Dr. Spurgeon for a physical and there was no mention of Plaintiff having problems due to her fibromyalgia. (Tr. 446). After reviewing all of the evidence of record, we find the ALJ properly addressed why he did not give controlling weight to Dr. Spurgeon's opinion. See Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (ALJ may elect in certain circumstances not to give controlling weight to treating physician's opinion, as record must be evaluated as whole; for treating physician's opinion to have controlling weight, it must be supported by medically acceptable diagnostic techniques and not be inconsistent with other substantial evidence in the case record); Dixon v. Barnhart, 353 F.3d 602, 606 (8th Cir. 2003) (medical opinions of a treating physician are normally accorded substantial weight, but they must not be inconsistent with other evidence on the record as a whole). Based on the entire evidence of record, we find substantial evidence to support the ALJ's RFC findings.

### D.   Hypothetical Proposed to Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, we find that the hypothetical the ALJ proposed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments prior to June 30, 1995, did not preclude her from performing other work as a housekeeper/cleaner, a mail clerk, and a hand packager. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question

-18-

AO72A
(Rev. 8/82)

constitutes substantial evidence).

**V.      Conclusion:**

Based on the foregoing, we recommend affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 26th day of January 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-19-